**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL 12 2016
7-12-16
JUDGE JOHN Z. LEE
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 15 CR 744-2 |
| v. | Judge John Z. Lee |
| JOHN OLIVIERI | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JOHN OLIVIERI, and his attorney, JAMES F. YOUNG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2.     The indictment in this case charges defendant with conspiracy to distribute controlled substances outside the scope of professional practice, in violation of Title 21, United States Code, Section 846.

3.     Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment, which charges defendant with conspiracy to distribute controlled substances outside the scope of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 846.

## **Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or about December 2008 and continuing until on or about February 2013, at Lombard, in the Northern District of Illinois, and elsewhere, JOHN OLIVIERI and Michael Jennings did conspire with each other, and with others known and unknown, to knowingly and intentionally distribute a controlled substance, namely, a quantity of a mixture and substance containing Hydrocodone, a Schedule III Controlled Substance; a quantity of a mixture and substance containing Phendimetrazine, a Schedule III Controlled Substance; and a quantity of a mixture and substance containing Phentermine, a Schedule IV Controlled Substance, outside the scope of professional practice and without a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

More specifically, in approximately December 2008, OLIVIERI and Michael Jennings agreed to operate the RWLC Weight Loss Clinic ("RWLC") in Lombard, Illinois.   OLIVIERI was a physician licensed to practice medicine in Illinois with a Drug Enforcement Administration registration number which permitted him to order and prescribe controlled substances. Jennings managed RWLC and OLIVIERI allowed Jennings to order controlled substances, such as Phendimetrazine and Phentermine, from pharmaceutical companies with OLIVIERI'S DEA registration number.  After

2

pharmaceutical companies delivered these drugs to OLIVIERI's medical office in Tinley Park, OLIVIERI delivered the drugs to Jennings at locations in the southwest suburbs or at RWLC's office in Lombard. On occasion, Jennings picked up shipments of controlled substances at OLIVIERI's office. In return, Jennings paid OLIVIERI in cash for the drugs.

Jennings managed the RWLC clinic, which was open six days a week. OLIVIERI, who had a full-time medical practice in the south suburbs, was rarely present at RWLC. OLIVIERI was aware that Jennings, who had no medical training, regularly saw patients and dispensed controlled substances to those patients at RWLC outside of his presence and without providing them with an appropriate physical examination or performing any medical tests. OLIVIERI was further aware that Jennings shipped controlled substances directly to individuals via UPS without seeing these individuals in the RWLC office.

In approximately June 2009, OLIVIERI further agreed that Jennings could order Hydrocodone, a narcotic pain medication and Schedule III controlled substance, with his DEA registration number for delivery to his medical office. OLIVIERI then delivered the Hydrocodone, which usually came in bottles of 500 pills, to Jennings, who paid OLIVIERI in cash for the hydrocodone. Jennings paid OLIVIERI at least $166,000 during Jennings' relationship with OLIVIERI.

OLIVIERI acknowledges that approximately 762,700 Schedule IV controlled substance Phentermine pills; 40,000 Schedule III controlled substance Phendemetrizine pills; and approximately 418,000 dosage units of Schedule III

3

Hydrocodone of various strengths were ordered with his DEA number and delivered to his office from several drug suppliers as part of his agreement with Jennings. OLIVIERI further acknowledges that Jennings' distribution of controlled substances at RWLC and elsewhere was outside the scope of professional medical practice and without a legitimate medical purpose.

7.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $500,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the

4

Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b. **Offense Level Calculations**.

i. The amount of controlled substances involved in the offense of conviction for which defendant is accountable is 418,800 dosage units of Schedule III Controlled Substance Hydrocodone, 40,000 units of Schedule III Controlled Substance Phendimetrazine, and 762,700 units of Schedule IV Controlled Substance Phentermine. Pursuant to Application Note 8(B) to Guideline §2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its marijuana equivalent to obtain the combined offense level in the Drug Quantity Table in §2D1.1. The combination of marijuana equivalents for the Hydrocodone, Phendimetrazine and Phentermine, for which the defendant is accountable, equals 505 kilograms of marijuana. Therefore the base offense level for Count One is 26, pursuant to Guidelines §§2D1.1(a)(5) and (c)(7).

ii. The offense level is increased two levels because defendant abused a position of trust, namely being a physician licensed to practice medicine in

5

the State of Illinois and permitted to dispense controlled substances using a DEA registration number, pursuant to Guideline 3B1.3

        iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iv.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

        c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 25, which, when combined with the anticipated criminal history category of I, RWLC in an anticipated advisory sentencing guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release and fine the Court may impose.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5Kl.l, to depart downward from the low end of the applicable guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guideline range.

7

Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13.    If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

Case: 1:15-cr-00744 Document #: 33 Filed: 07/12/16 Page 9 of 15 PageID #:78

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 15 CR 744-2.

17.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

18.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

### Waiver of Rights

19.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge, sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.  **Waiver of appellate rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1 and the court grants the motion, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit

11

defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

20.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline

§ 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

26.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

13

27.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

29.  Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

30.  Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____7/12/16_____

ZACHARY T. FARDON
United States Attorney

JOHN OLIVIERI
Defendant

MATTHEW M. SCHNEIDER
Assistant U.S. Attorney

JAMES F. YOUNG
Attorney for Defendant

15